Anita Susan Brenner, Esq. (SBN 58741)
**LAW OFFICES OF TORRES & BRENNER**
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
Telephone:   (626) 792-3175
Facsimile:   (626) 792-2921
E-mail:      info@torresbrenner.com

Attorneys for Defendant, County of Los Angeles, a public entity

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN LORENZO MORRIS,<br><br>          Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES,  COUNTY OF LOS ANGELES, LOS ANGELES WORLD AIRPORTS, AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>          Defendants. | Case No.: 2:22-cv-09277-ODW-MRWx<br><br>[Honorable Otis D. Wright II, United States District Judge]<br><br>**DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*TORRES & BRENNER*
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

**Table of Contents**

Table of Authorities ..................................................................................................4

Memo of Points and Authorities .............................................................................5

I.      Introduction and Summary of Argument ......................................................6

II.     Pertinent Procedural History ........................................................................7

        A.      Complaint ...........................................................................................7

        B.      First Amended Complaint ...................................................................7

III.    Legal Standard .............................................................................................8

        A.      Rule 12(b)(6) ......................................................................................8

        B.      Rule 16(b)(4) ......................................................................................9

        C.      Rule 15 ...............................................................................................9

IV.     The Third Claim Should Be Stricken Because the Amendments Exceed
        the Limited Leave to Amend the Fifth Claim, were Made Beyond      the
        Scheduling Order Cut-Off and are Futile......................................................10

V.      The Fifth Cause of Action Does Not State a *Monell* Claim for Over
        Detention ....................................................................................................12

        A.      The FAC omits the California Penal Code section 825 Covid
                Extension Orders of the Governor and the Superior Court ................12

        B.      The FAC pleads conclusions as opposed to facts concerning
                Plaintiff's status from January 5 through 8, 2021..............................13

        C.      The Sheriff has the discretion to execute orders of the Local Health
                Officer ...............................................................................................14

        D.      The Jailor Does not have the Duty to Investigate arrests made by
                other agencies....................................................................................14

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

E.      The FAC's Conclusory allegations as to COVID policies does not suffice under Monell and does not establish that the Sheriff acted for the County, as opposed to acting for the State of California ...............16

VI.     The FAC is Barred by the Qualified Immunity ..............................................16

VII.    The Inconsistent Allegations Violate Rule 8 .................................................17

TORRES & BRENNER

301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

DEFENDANT COUNTY OF LOS ANGELES'S MEMO. PS&AS ISO MOTION TO DISMISS FAC
[2:22-cv-09277-ODW(MRWx)]

**Table of Authorities**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................8, 9, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................8

*Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995).......................................................10

*Brazil v. United States Dep't of the Navy*, 66 F.3d 193 (9th Cir. 1995) .................17

*Brewster v. Shasta County*, 275 F. 3d 803 (9th Cir. 2001) ...............................15, 16

Cal. Govt. Code § 26605 .............................................................................................15

*Cnty of L.A. v. Superior Court (Peters),* 68 Cal. App. 4th 1166 (1998) .................16

*Cnty. of L. A. Dep't of Pub. Health v. Superior Court of L. A. Cnty.*,

    61 Cal. App. 5th 478 (2021)...........................................................................11, 12

*Coffee v. Superior Court*, 147 Cal. 525 (1905) .......................................................14

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) ..................................9

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) ............................10

*Gates v. Superior Court,* 32 Cal.App.4th 481 (1995) .............................................15

*Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138 (D. Me. 1985) ......................9

*Graham v. Connor*, 490 U.S. 386 (1989) ..................................................................9

*Hernandez-Valenzuela v. City of S.F.*, 75 Cal.App.5th 1108 (2022) .....................13

*In Re. M.P. et. al, v. D.P., et. al* 52 Cal. App. 5th 1013 .........................................13

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605 (E.D. Cal. 1999) ...................................9

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) ...................9

*Johnson v. State of California*, 69 Cal.2d 782(1968)...............................................15

*L.A. Lakers, Inc., v. Fed. Ins. Co.*, 591 F. Supp. 672 (C.D. Cal. 2022). .................13

*Leiser v. Kloth*, 933 F.3d 696 (7th Cir. 2019) .........................................................17

*Loehr v. Ventura Cty. Cmty. Coll. Dist.*, 743 F.2d 1310 (9th Cir. 1984)................10

*Los Angeles Free Press, Inc. v. City of Los Angeles*, 9 Cal.App.3d 448 (1970)......14

*McKeever v. Block*, 932 F.2d 795 (9th Cir. 1991)...................................................17

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

DEFENDANT COUNTY OF LOS ANGELES'S MEMO. PS&AS ISO MOTION TO DISMISS FAC
[2:22-cv-09277-ODW(MRWx)]

*Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978) ........................................passim

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) ....................................14

*Pearson v. Callahan*, 555 U.S. 223 (2009) ............................................................9

*Pitchess v. Superior Court*, 2 Cal.App.3d 653 (1969) ...........................................14

*Reichle v. Howards* , 566 U.S. 658 (2012)...........................................................17

*Saucier v. Katz*, 533 U.S. 194 (2001) .....................................................................9

*Stanley v. Superior Court of Contra Costa Cnty.*, 50 Cal.App.5th 164 (2020) .......13

*Streit v. County of Los Angeles,* 236 F.3d 552 (9th Circuit 2001) ....................15, 16

*Tennessee v. Garner*, 471 U.S. 1 (1985) .................................................................9

*United States v. Webb*, 655 F.2d 977 (9th Cir. 1981)............................................10

*Venegas v. County of Los Angeles,* 32 Cal. 4th 820 (2004) ...................................16

**Statutes, Rules and Constitution**

42 U.S.C. § 1983.....................................................................................................15

Cal. Govt. Code § 26600 .........................................................................................14

Cal. Govt. Code § 26601 .........................................................................................14

Cal. Govt. Code § 26602 .........................................................................................14

Cal. Govt. Code § 68115 .........................................................................................13

Cal. Penal Code § 825 ......................................................................................12, 13

Fed. R. Civ. P. 12(b)(6)...............................................................................7, 8, 15

Fed. R. Civ. P. 15..........................................................................................6, 9, 10, 11

Fed. R. Civ. P. 15(a) .................................................................................................9

Fed. R. Civ. P. 15(a)(2).............................................................................................9

Fed. R. Civ. P. 16(b)(4)...................................................................................6, 7, 9, 10

U.S. Const. amend. IV ...............................................................................................8

TORRES & BRENNER

301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Calvin Lorenzo Morris ("Plaintiff" or "Morris") alleges that he was wrongfully arrested at the L.A. Airport and that he was over detained at the County jail from December 22, 2020, to January 8, 2021.

Previously, the Court granted separate motions to dismiss the Complaint filed by Defendant County of Los Angeles ("County") and co-Defendants City of Los Angeles ("City") and Los Angeles Airport, ("Airport"), with limited leave to amend the Fifth Claim for violation of *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978).  ECF 35, p. 9.

Plaintiff has now filed his "Corrected First Amended Complaint" ("FAC"). ECF 37.  The FAC extensively amends the First, Second, Third and Fourth Claims, and incorporates those amendments into the Fifth Claim. The FAC also adds new parties, without leave of Court. These amendments and new parties should be stricken because the Scheduling Order set a new party/amendment cut-off date of June 12, 2023. ECF 29, p. 24.

Plaintiff did not seek relief under Federal Rules of Civil Procedure (hereafter "Rule") 16(b)(4). Based on docket, good cause does not exist for such relief.  The amendments are futile under Rule 15 standards, due to the applicable COVID-19 emergency orders.

The FAC does not correct the defects noted in the last order, because the FAC continues to make inconsistent allegations as to whether the arrest was only by City and Airport employees, or whether County employees also arrested Plaintiff.  The policy allegations are conclusory and do not specify the operative time period.

The FAC alleges that a jailor has the duty to investigate the status of a criminal filing. On its face, the Qualified Immunity bars this novel theory which does not distinguish between the Sheriff's jailor versus law enforcement functions.

## II.      PERTINENT PROCEDURAL HISTORY

### A.      Complaint

Plaintiff commenced this lawsuit with a complaint filed on December 21, 2022 with a Complaint seeking to plead six claims. ECF 1. The named defendants are City of Los Angeles ("City"), County of Los Angeles ("County"), Los Angeles World Airports ("Airport"), and DOES 1 through 10.  County filed its motion to dismiss on January 23, 2023. ECF 12. City and Airport filed a motion to dismiss on February 22, 2023. ECF 21.

On March 21, 2023, the Court issued its Scheduling Order which set June 12, 2023, as the cut-off to hear motions to amend the pleadings or to add new parties. ECF 29, p. 24.

On July 26, 2023, the Court issued its Order granting City, Airport and County's separate motions to dismiss the Complaint under Rule 12(b)(6). The Order also granted Plaintiff limited leave to amend the Fifth Claim.

As for County, the Order stated that the Court "GRANTS Defendants' Motion to Dismiss Morris's fifth cause of action, with leave to amend to remedy the deficiencies identified above." ECF 35, p. 9. The "deficiencies identified above" were that the Fifth Claim made "conclusory assertions" and did "not allege any policy, custom, or failure to train, written or otherwise," nor a "direct causal link" between the policy and constitutional violations, or harm.  ECF 35, p. 7.

### B.      First Amended Complaint

On August 16, 2023, Plaintiff filed his FAC. ECF 37.  The FAC amended all causes of action, including the Third Claim, and incorporated those amendments into the sole Fifth Claim against County. ECF 37, p. 21, ¶92.

The FAC added four new parties, beyond the new party cut-off deadline and without filing a Rule 16(b)(4).  All four of the new parties are alleged to be County nurses or health care workers. They are Anne Legaspi, Hamid S. Sovis, Antonio Isaac, and Rajah T. Lomingkit (hereafter, "the new defendants"). ECF 37, pp. 2-3,

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

- 7 -

¶¶ 8-11.

The new defendants in the FAC are not newly identified DOE defendants. The DOES in the Complaint were all peace officers or law enforcement personnel, as opposed to health care workers.[1] The DOE defendants in the FAC are all law enforcement personnel, as opposed to nurses or other health care workers.

The FAC alleges that DOES 1, 2, 5 and 6 arrested Plaintiff on December 22, 2023. ECF 37, p. 10, ¶ 33 (describing the arrest). The FAC identifies DOES 1 and 2 as employees of County, City and Airport. ECF 37, pp. 4-5, ¶ 14. The FAC identifies DOES 5 and 6 inconsistently. On one hand, DOES 5 and 6 are alleged to be as employees of City, County and Airport. ECF 37, pp. 4-5, ¶ 14. However, another paragraph identifies DOES 5 and 6 as employees of Airport and City. ECF 37, p. 4, ¶ 13. Another paragraph alleges that Plaintiff was arrested by City and Airport personnel. ECF 37, p. 22, ¶ 96.

## III. LEGAL STANDARD

### A. Rule 12(b)(6)

Under Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). See, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A Fourth Amendment excessive force claim requires "careful attention to the facts and circumstances of each particular case" (*Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985); quoted by *Graham v. Connor*, 490

---

[1] The Complaint's allegations as to the DOES are as follows. DOES 9 and 10 are County peace officers, officials and/ or the County Sheriff. Dkt. 1, p. 5, ¶ 13. DOES 3 and 4 are employees of County "or some other public entity." Dkt. 1, p. 3, 8. DOES 3 and 4 conspired with all the other DOES 1, 2, 5 and 6. Dkt. 1, p. 6, ¶ 15. DOES 5 and 6 are employees of the Los Angeles Airport Police. Dkt. 1, p. 4, ¶ 9. DOES 7 and 8 are City or Airport law enforcement personnel or officials. Dkt. 1, p. 4, ¶ 11. DOES 9 and 10 are County peace officer or the Sheriff. Dkt. 1, p. 5, ¶ 13. DOES 1 and 3 are City police. Dkt. 1, p. 2, ¶7. None of the Complaint's DOES are healthcare workers.

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

U.S. 386, 396 (1989), overruled on other grounds by *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson v. Callahan*, 555 U.S. 223, 233-44 (2009). Conclusory language does not suffice. "[T]hreadbare recitals" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B.    Rule 16(b)(4)

Under Rule 16(b)(4), a "schedule may be modified only for good cause and with the judge's consent." In particular, the movant "must show good cause for not having amended their [pleading] before the time specified in the scheduling order expired. [ ] This standard 'primarily considers the diligence of the party seeking the amendment.'" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (citation omitted); see e.g., *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (elaborating on diligence of party seeking amendment).

To show good cause, a party must provide specific, detailed, and non-conclusory reasons for granting the modification. See Fed. R. Civ. P. 16(b)(4) (requiring good cause showing); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (noting that the standard focuses on a party's diligence and that "the inquiry should end" when diligence is not shown). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609 (citing *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

## C.    Rule 15

A party must also establish that the amendment otherwise satisfies the standard for leave to amend under Rule 15(a)(2), which instructs the court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts should apply Rule 15(a) with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); see also *United States v. Webb*, 655

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

- 9 -

F.2d 977, 979 (9th Cir. 1981).

A motion for leave to amend under Rule 15 may be denied if it: (1) is futile; (2) causes prejudice to the opposing party; (3) is sought in bad faith; (4) causes undue delay; or (5) if the pleading was previously amended. *Leighton*, 833 F.2d at 186, fn. 3; *Loehr v. Ventura Cty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). These factors are not weighed equally. For example, futility by itself is sufficient grounds to deny leave. See *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The party opposing leave bears the burden of proof. *Leighton*, 833 F.2d at 183, 187 (9th Cir. 1987).

## IV. THE THIRD CLAIM SHOULD BE STRICKEN BECAUSE THE AMENDMENTS EXCEED THE LIMITED LEAVE TO AMEND THE FIFTH CLAIM, WERE MADE BEYOND THE SCHEDULING ORDER CUT-OFF AND ARE FUTILE

Plaintiff did not file a motion under Rule 16(b)(4) to add new parties nor to amend to add new and different theories. The allegations in the Third Claim are incorporated into the Fifth Claim (*Monell*) against the County. ECF 37, p. 21 ¶92. The theory against the County now varies significantly from the prior *Monell* theory in the original Complaint.

The new allegations are that the new defendants, who are County employee nurses, followed a policy to quarantine Plaintiff: "Defendants LEGASPI, ISAAC, SOVIS, LOMINGKIT and DOES 3 and 4 all falsely and wrongfully placed plaintiff MORRIS in COVID-19 quarantine, notwithstanding that he did not test positive for COVID-19 at the Los Angeles County Jail, and notwithstanding that said defendants were not aware of any persons who plaintiff had been exposed to who had tested positive for being infected with the COVID-19 virus."  ECF 37, p. 15, ¶66.

The FAC admits that the new defendants were following a protocol: "Defendants LEGASPI, ISAAC, SOVIS, LOMINGKIT and DOES 3 and 4 all falsely and wrongfully placing plaintiff MORRIS in COVID-19 quarantine, not

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

1   because he tested positive for COVID-19, and not because he was known to have

2   been exposed to anyone who had been found to have been shown to be COVID-19

3   positive, but because they were following the protocol (the written and established

4   policies, and practices at said jails) established by the final and top policy making

5   officials for the Los Angeles County Sheriff's Department, to place all arrestees and

6   other inmates brought into the Los Angeles County Jails in COVID-19 quarantine

7   for a minimum of 14 days, and as long at 20 days; regardless of whether any of said

8   arrestees and other inmates showing positive for COVID-19, or having otherwise

9   been exposed to some person who had been shown to have been positive for

10  COVID-19." ECF 37, p. 16, ¶ 68.

11          Under Rule 15, any further amendment is futile because the COVID-19

12  policies were not established *sui generis* by the County of Los Angeles, and the

13  FAC alleges that the new defendants followed policy  and were not policy makers.

14  As a result,  the FAC cannot state a Due Process claim. The nurses are not alleged to

15  have been deliberately indifferent or that medical care was denied. Instead, Plaintiff

16  admits that he was under the care of the nurses, who were providing care, not

17  denying it, and following a COVID quarantine policy.

18          As a matter of law, the COVID policies were established by the emergency

19  orders of the Governor of the State of California, who empowered the Judicial

20  Council of the Superior Court of the State of California and the Superior Court for

21  the County of Los Angeles, to take steps to stop the spread, as well as the CDC,

22  State and County Departments of Health.  "On March 4, 2020, Governor Newsom

23  declared a 'State of Emergency,' in response to the global outbreak of COVID-19,

24  'a new disease, caused by a novel (or new) coronavirus that has not previously been

25  seen in humans.'" *Cnty. of L. A. Dep't of Pub. Health v. Superior Court of L. A.*

26  *Cnty.*, 61 Cal. App. 5th 478, 484 (2021). The Executive Orders empowered the

27  Judicial Council to respond to COVID-19. "Since March 2020, the County has also

28  issued a series of health orders to combat the spread of COVID-19. These orders

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

1   have been modified in response to hospitalization and death rates, and scientists'

2   evolved understanding of how the virus is transmitted." *Cnty. of L. A. Dep't of Pub.*

3   *Health v. Superior Court of L. A. Cnty.*, 61 Cal.App.5th 478, 484 (2021).  "To limit

4   the spread of COVID-19, on March 19, 2020, Governor Newsom issued a Stay-at-

5   Home Order, requiring California residents to remain in their homes except when

6   engaging in essential activities.  *Cnty. of L. A. Dep't of Pub. Health v. Superior*

7   *Court of L. A. Cnty., supra*, 61 Cal.App.5th at 484.  After March of 2020, "the

8   County…also issued a series of health orders to combat the spread of COVID-19.

9   These orders have been modified in response to hospitalization and death rates, and

10  scientists' evolved understanding of how the virus is transmitted." *Cnty. of L. A.*

11  *Dep't of Pub. Health v. Superior Court of L. A. Cnty., supra*, 61 Cal.App.5th at 484.

12          The dates are significant. Vaccines were not available to the general public

13  until January 20, 2021. Here Plaintiff complains of detention between December

14  22, 2020, to January 8, 2021. ECF 37, p. 16 ¶ 69. In late 2020 and early 2021,

15  Quarantine, due to exposure, was the norm.  Once the Third Claim is stricken, there

16  is no basis for the Fifth Claim under *Monell.*

17  **V.   THE FIFTH CAUSE OF ACTION DOES NOT STATE A *MONELL***

18        **CLAIM FOR OVER DETENTION**

19        **A.   The FAC omits the California Penal Code section 825 Covid**

20            **Extension Orders of the Governor and the Superior Court**

21          The FAC alleges that the arraignment deadline was 48 hours. See ECF 37,

22  pp. 37-39. In fact, it was seven days, excluding holidays and weekends. California

23  Penal Code section 825 provides that an accused "shall in all cases be taken before

24  the magistrate without unnecessary delay, and, in any event, within 48 hours after

25  his or her arrest, excluding Sundays and holidays." These deadlines were extended

26  to seven days beginning in April of 2020. The second-day deadline was in effect

27  during the operative time period of December 22, 2020, to January 8, 2021.

28          The extension was the result of the COVID-19 pandemic. "As early as

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

December, 2019, the Virus began to spread in Los Angeles as it was exhaled by infected people. *L.A. Lakers, Inc., v. Fed. Ins. Co.*, 591 F. Supp. 672, 674 (C.D. Cal. 2022). On March 27, 2020, Governor Newsom's Executive Order N-38-20 granted the State Chief Justice authority to issue rules and emergency orders to extend statutory deadlines, including deadlines for arraignments. "The order "suspended any limitations in Government Code section 68115 or any other provision of law that limited the Judicial Council's ability to issue emergency orders or rules, and suspended statutes that may be inconsistent with rules the Judicial Council may adopt." *Stanley v. Superior Court of Contra Costa Cnty.*, 50 Cal.App.5th 164, 737-738 (2020). See also *In Re. M.P. et. al, v. D.P., et. al* 52 Cal. App. 5th 1013.

On April 2, 2020, Los Angeles Superior Court presiding judge Kevin Brazile issued a General Order which expressly extended the time under California Penal Code section 825 from 48 hours to seven days. Los Angeles Superior Court General Order ("LASC"), 2020-GEN-007-00, p. 3. On December 2, 2020, the State Judicial Council chief justice, acting under the Governor's emergency orders, issued an emergency order authorizing the extension of deadlines by each superior court. See *Hernandez-Valenzuela v. City of S.F.*, 75 Cal.App.5th 1108, 1114-1117 (2022).

In response, on December 2, 2020, Los Angeles Superior Court presiding judge Kevin Brazile issued a General Order which noted "the recent spike in COVID-19 cases in Los Angeles County." The Order expressly recognized the continuing extension to the deadlines reflected in the April 2, 2020, General Order. LASC, 2020-GEN-026-00, p. 2.

As a result of normal holidays, on December 25, 2020, and January 1, 2021, the earliest deadline under section 825, in the absence of a medical or COVID quarantine order, specific to Plaintiff, would have been January 5, 2021.

**B.** **The FAC pleads conclusions as opposed to facts concerning Plaintiff's status from January 5 through 8, 2021**

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

13 -

Missing from the FAC are any factual allegations concerning the time period of January 5 through 8, 2021. The FAC alleges in conclusory terms that Plaintiff was "wrongfully" placed in COVID quarantine and was listed as medically disabled from being able to appear in court. ECF 37, p. 28, ¶118. These allegations are conclusory and do not suffice under *Monell*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal, supra*, 556 U.S. 662, 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

## C.     The Sheriff has the discretion to execute orders of the Local Health Officer

The California Government Code gives the Sheriff the discretion to execute orders of the local health officer. The FAC does not address nor negate this duty. "The sheriff… may execute all orders of the local health officer issued for the purpose of preventing the spread of any contagious or communicable disease." Cal. Govt. Code § 26602.

## D.     The Jailor Does not have the Duty to Investigate arrests made by other agencies

Insofar as County did not arrest Plaintiff, the sole function of the Sheriff was as a jailor, not as law enforcement.[2] Plaintiff proposes that there is a duty of the

---

[2] The FAC is ambiguous as to the arresting agency. The sole function of the Sheriff was as a jailor, not as law enforcement. The Sheriff has a general duty to investigate crimes in his or her jurisdiction and arrest those who have committed public offenses. See *Coffee v. Superior Court*, 147 Cal. 525, 530 (1905); *Los Angeles Free Press, Inc. v. City of Los Angeles*, 9 Cal.App.3d 448, 457 (1970); *Pitchess v. Superior Court*, 2 Cal.App.3d 653, 657 (1969); see also Govt. Code §§ 26600, 26601. A sheriff may exercise some degree of discretion in investigating criminal activity. See *Johnson v. State of California*, 69 Cal.2d 782, 793-797(1968); *Gates v. Superior Court,* 32 Cal.App.4th 481, 503, 506-507 (1995).

TORRES & BRENNER

301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

1  jailor to call the District Attorney, the Los Angeles City Attorney and the Court to

2  determine if the case against Plaintiff was rejected or filed. ECF 37, p. 26, ¶¶106-

3  107.

4      Duty is a question of law for this Court. Defendant has found no caselaw to

5  support Plaintiff's novel argument. In considering a motion under Rule 12(b)(6),

6  the Court determines whether the alleged duty exists, whether the allegations in the

7  FAC suffice to establish a policy, a duty, and, if so,  whether the Sheriff's role is as

8  a state or county policymaker with respect to the alleged policies.

9      The duties of the Sheriff as a jailor are set forth in state statutes. See Cal.

10  Govt. Code § 26605 ("the sheriff shall take charge of and be the sole and exclusive

11  authority to keep the county jail and the prisoners in it…")

12      The Ninth Circuit recognized the distinction between state and county policy

13  authority in *Brewster v. Shasta County*, 275 F. 3d 803 (9th Cir. 2001), which held:

14  A county is subject to liability under 42 U.S.C. §§ 1983 if its policies, established

15  by the county's lawmakers or 'by those whose edicts or acts . . . may fairly be said

16  to represent official policy,' caused the constitutional violation at issue. *Monell,* 436

17  U.S. at 694. The parties agree that the sheriff is the relevant policymaker. The

18  question is whether he is a policymaker on behalf of the state or the county; if he is

19  a policymaker for the state, then the county cannot be liable for his actions. See,

20  e.g., *Streit v. County of Los Angeles,* 236 F.3d 552, 559 (9th Cir.), cert. denied, 122

21  S. Ct. 59 (2001)." *Brewster v. Shasta County, supra*, 275 F.3d at 805.

22      Courts decide the state versus county function on a case-by-case basis.  "In

23  setting policies concerning release of persons from the Los Angeles County Jail, the

24  Los Angeles County Sheriff acts as a state officer performing state law enforcement

25  duties, and not as a policymaker on behalf of the County of Los Angeles." *Cnty of*

26  *L.A. v. Superior Court (Peters),* 68 Cal. App. 4th 1166, 1178 (1998).

27      The *Brewster* case cited to *Streit v. County of Los Angeles, supra,* 236 F.3d

28  552, 559, which established the framework to address this issue. Under *Streit,* the

- 15 -

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175

determination of the role of the sheriff required an analysis of California law. In *Streit*, the court concluded that the Sheriff acted for the County of Los Angeles, not the state. *Streit, supra*, 236 F. 3d. at 561. In *Brewster,* the court concluded that the sheriff acted for Shasta County "when investigating crime" and therefore the county may be subject to liability. However, the California Supreme Court came to the opposite conclusion in *Venegas v. County of Los Angeles,* 32 Cal. 4th 820 (2004).

> **E.     The FAC's Conclusory allegations as to COVID policies does not suffice under *Monell* and do not establish that the Sheriff acted for the County, as opposed to acting for the State of California.**

Neither *Brewster* nor *Streit* concerned State Governor's emergency orders during a pandemic. Unlike all the prior cases on jail conditions, the novel corona virus has resulted in novel policies.

The FAC has not plead specific facts to support a claim that the Sheriff acted for the County, as opposed to acting pursuant to the orders of the Governor of the State of California and the judicial branch in creating pandemic policies.

*Brewster* and *Streit* require an analysis of all the California COVID orders, beginning with the Governor's emergency declaration, and continuing through the emergency orders of the Judicial Council, and the application of the emergency orders by the Los Angeles Superior Court.

Once the alleged "policies" are described factually and without conclusory language, the next issue is to determine the Sheriff acted for the State entities and officials, the superior court, or for the County.

## VI.    THE FAC IS BARRED BY THE QUALIFIED IMMUNITY

Qualified immunity is a doctrine that protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (internal citations omitted.) "To be clearly established, a right must be sufficiently clear that every

16 -

1  reasonable official would have understood that what he is doing violates that right'

2  meaning that 'existing precedent must have placed the statutory or constitutional

3  question beyond debate.' "*Reichle v. Howards* , 566 U.S. 658, 664."

4      On its face, the FAC establishes the qualified immunity in the context of

5  Plaintiff's claim because all of these alleged policies were novel policies in

6  response to a novel virus and unexpected pandemic.

7  **VII.   THE INCONSISTENT ALLEGATIONS VIOLATE RULE 8**

8      The FAC makes inconsistent allegations as to whether the arrest was by

9  employees of employees of co-Defendants City of Los Angeles ("City") and Los

10  Angeles Airport, ("Airport"), or County employees.  Once again, the FAC does not

11  clearly allege whether the Plaintiff intends to sue the County on the over detention

12  theory or to also include the arrest, search, and video recording theories. This

13  distinction is critical to the Plaintiff's Fifth Claim, which incorporates all prior

14  allegations. Dkt. 1, p. 16, ¶ 70.  Further, the policy allegations against the County

15  are pled in conclusory terms.  Plaintiff must allege a minimum factual and legal

16  basis for each claim that is sufficient to give each defendant fair notice of what

17  plaintiff's claims are and the grounds upon which they rest.  See, e.g., *Brazil v.*

18  *United States Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v.*

19  *Block*, 932 F.2d 795, 798 (9th Cir. 1991).

20                           Respectfully submitted,

21  Dated: August 29, 2023          LAW OFFICES OF TORRES AND BRENNER

22

23                           By*:*   */s/ Anita Susan Brenner*

24                                Anita Susan Brenner, Esq.,
                                 Attorney for Defendant County of Los
25                                Angeles

26

27

28

TORRES & BRENNER
301 East Colorado Boulevard, Suite 614
Pasadena, California 91101
(626) 792-3175