O

# United States District Court
# Central District of California

| | |
|---|---|
| CALVIN LORENZO MORRIS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES et al.,<br><br>Defendants. | Case № 2:22-cv-09277-ODW (MRWx)<br><br>**ORDER GRANTING MOTIONS TO DISMISS [45] [48]** |

## I. INTRODUCTION

Plaintiff Calvin Lorenzo Morris brings this excessive force action against Defendants County of Los Angeles (the "County"), City of Los Angeles (the "City"), Los Angeles World Airports ("LAWA"), and their employees (collectively, "Defendants"). (First Am. Compl. ("FAC"), ECF No. 37.) Defendants move to dismiss the First Amended Complaint ("FAC"), arguing that it exceeds the scope of previously granted leave to amend and fails to sufficiently plead the fifth cause of action for municipal liability. (County Mot. Dismiss FAC ("County Mot."), ECF No. 45; City & LAWA Mot. Dismiss FAC ("City-LAWA Mot."), ECF No. 48.) For the reasons discussed below, the Court **GRANTS** Defendants' Motions to Dismiss.[1]

---

[1] Having carefully considered the papers filed in connection with County's and City-LAWA's Motions (together, "Motions"), the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

In determining whether Morris sufficiently states a claim, the Court takes Morris's well-pleaded factual allegations as true. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

On December 22, 2020, Morris was in an airline kiosk check-in line at Los Angeles International Airport when another passenger initiated a verbal altercation with him. (FAC ¶¶ 22–25.) As a result, a police officer with the Los Angeles Airport Police Department—a department within LAWA—arrived and questioned Morris about the incident. (*Id*. ¶¶ 28–30.) Additional officers arrived and began questioning Morris in a threatening manner, prompting him to record them with his cell phone. (*Id*. ¶ 31.) The officers directed Morris to put his cell phone away, and although he complied, they violently tackled him to the ground and arrested him. (*Id*. ¶¶ 32–35.)

Officers first transported Morris to a Los Angeles Police Department station for booking and then to the Los Angeles County Sheriff's Department's Twin Towers Correctional Facility. (*Id*. ¶ 39.) Morris remained incarcerated at that facility from December 22, 2020, until January 8, 2021, spending a total of seventeen days in custody without a probable cause hearing, arraignment, or criminal charge.[2] (*Id*. ¶¶ 39, 41.)

Based on the above allegations, Morris initiated this action against Defendants asserting six causes of action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1.) Defendants moved to dismiss two causes of action under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (County Mot. Dismiss Compl., ECF No. 12; City-LAWA Mot. Dismiss Compl., ECF No. 21.) The Court granted in part and denied in part Defendants' initial motions, and granted Morris limited leave to amend. (Order re Mots. Dismiss ("July Order") 8–9, ECF No. 35.)

Morris then filed his First Amended Complaint, asserting five causes of action pursuant to 42 U.S.C. § 1983: (1) Fourth Amendment—unreasonable seizure of a

---

[2] Morris alleges that he was in custody either seventeen or eighteen days. (*See generally id.*)

person; (2) Fourth Amendment—unreasonable or excessive use of force; (3) Fourth and Fourteenth Amendments—violation of due process; (4) First Amendment—violation of right to record police actions; and (5) municipal liability—failure to train, and policy or custom (*Monell* claim).  (FAC ¶¶ 21–119.)  Defendants now move to dismiss certain portions of the First Amended Complaint as well as the fifth cause of action.  (*See* County Mot. 6; City-LAWA Mot. 2)  The Motions are fully briefed.  (*See* Opp'n County Mot., ECF No. 50; Opp'n City-LAWA Mot., ECF No. 51; County Reply, ECF No. 52; City-LAWA Reply, ECF No. 53.)[3]

### III.  LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy "the minimal notice pleading requirements of Rule 8(a)(2)"—"a short and plain statement of the claim."  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee*, 250 F.3d at 679 (internal quotation marks omitted).  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

---

[3] As the Motions are substantially identical, the Court addresses them together.

## IV.     DISCUSSION

Defendants move to dismiss Morris's FAC on the grounds that Morris exceeds the scope of amendment permitted by the July Order and that the fifth cause of action continues to fall short of the pleading requirements for municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

### A.     Amendment Beyond the Scope of Leave Granted

The Court's July Order was narrowly tailored and permitted Morris to amend only his fifth cause of action—the *Monell* claim. (July Order 8–9.) The Court found the *Monell* claim deficient because Morris did "not identify any policy, custom, or failure to train," and did "not explain how any policy, custom, or failure to train caused him harm." (*Id.* at 8.) Accordingly, any amendments that do not address these deficiencies go beyond the scope of the Court's July Order and are hereby stricken from the FAC. *See Gerritsen v. Warner Bros. Ent.*, 116 F. Supp. 3d 1104, 1124–25 (C.D. Cal. 2015) (striking the plaintiff's amendments that exceeded "the scope of leave to amend granted by the court"). Specifically, the Court strikes the FAC to the extent Morris (1) adds parties, (2) increases damages, and (3) amends other claims.

### 1.     Improper Addition of New Parties

The First Amended Complaint introduces four new defendants, all healthcare workers employed by the County: Annie Legaspi, Antonio Isaac, Hamid S. Sovis, and Rajah T. Lomingkit. (FAC ¶¶ 8–11.) The Court's July Order did not grant leave to add new parties. Further, the Court's Scheduling Order prohibits the addition of parties after June 12, 2023, absent an appropriate motion. (Scheduling & Case Management Order 5–6, 24, ECF No. 29.) As Morris filed the FAC on August 16, 2023, in which he added two defendants two months beyond the Scheduling Order's deadline of June 12, 2023, Morris violated both the July Order and the Court's Scheduling Order. As such, the Court strikes the new defendants and any claims brought against them. *See Kennedy v. Full Tilt Poker*, No. 2:09-cv-07964-MMM (AGRx), 2010 WL 3984749, at *1 (C.D. Cal. Oct. 12, 2010) (noting that plaintiffs'

amended complaint "exceeded the authorization to amend . . . because plaintiffs had not sought leave of court to add new claims and defendants").

### 2. *Improper Amendment of Damages*

In the First Amended Complaint, Morris also doubled the expected damages for each cause of action, from $5,000,000 to $10,000,000. (FAC ¶¶ 45, 60, 75, 90, 119.) Per the July Order, the Court prohibited amendment to any cause of action other than the fifth. (July Order 8–9.) Moreover, the Court granted Morris leave only to remedy the deficiencies as to establishing *Monell* liability, not to double his damages. (*See id.*) Additionally, even if the amended damages did not exceed the scope of the July Order, Morris's underlying allegations necessarily remain unchanged, and he has provided no explanation to justify the significant damages increases. As such, the Court strikes the increased damages.

### 3. *Improper Amendment Beyond the Fifth Cause of Action*

Morris makes several amendments to causes of action other than the fifth cause of action—a clear violation of the July Order. For example, Morris adds multiple pages of new information to support his third cause of action. (*Compare* Compl. ¶¶ 58–63, *with* FAC ¶¶ 62–76.) As amendment beyond the fifth cause of action is improper, the Court strikes all unauthorized additional allegations to the first through fourth causes of action. *See PB Farradyne, Inc. v. Peterson*, No. C 05-3447 SI, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006) (striking the plaintiff's amended complaint that included new theories of liability "outside the scope of the leave to amend granted").

## B. Municipal Liability (*Monell* Claim)

The Court now turns to Morris's fifth cause of action—the *Monell* claim. To state a claim for *Monell* liability, a plaintiff must allege a constitutional injury that results from, among other things, a custom or policy of the municipality, or a failure to train the municipality's police officers. *Monell*, 436 U.S. at 690–91; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Where *Monell* liability is based on a policy or

custom, a plaintiff must allege several threshold requirements: "(1) that [the plaintiff] possessed a constitutional right of which [they were] deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (first alteration in original). A "[f]ailure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Id*. (quoting *City of Canton*, 489 U.S. at 390).

To establish that the municipality had a policy, a plaintiff must do more than merely allege that a municipal defendant "maintained or permitted an official policy . . . of knowingly permitting the occurrence of the type of wrongs" alleged in the complaint. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Rather, to state a cause of action for *Monell* liability based on the municipality's policy, a plaintiff must sufficiently (1) "identify the challenged policy/custom"; (2) "explain how the policy/custom is deficient"; (3) "explain how the policy/custom caused the plaintiff harm"; and (4) "reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur." *Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010).

Policies can include "written policies, unwritten customs and practices, [and] failure to train municipal employees on avoiding certain obvious constitutional violations." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). When premising *Monell* liability on a failure to train, a plaintiff must allege more than a one-time incident; his allegations must establish that "the existence of a pattern of tortious conduct by inadequately trained employees . . . [wa]s the 'moving force' behind the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407–08 (1997). Finally, unwritten policies may be sufficient to state a

*Monell* claim where a plaintiff alleges a practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

### 1. Claims Against Defendants City and LAWA

Morris alleges that the City and LAWA violated § 1983 and *Monell* by "fail[ing] to discipline [their] police officers for arresting persons for video recording their police officers, and tolerat[ing] such bogus arrests for violation of Cal. Penal Code § 148(a)(1) and for other crimes." (FAC ¶ 95; Opp'n City-LAWA 10–11.) Morris also identifies two "policies and/or practices and/or customs and/or usages" of the City and LAWA that allegedly violate § 1983 and *Monell*:

> 1) [U]nlawfully interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech, such as to record police actions, by arresting innocents for recording Los Angeles Police Department / Los Angeles Airport Police officers, and
>
> 2) [F]ailing to take person arrested by Los Angeles Police Department / Los Angeles Airport Police officers before a judge pursuant to Cal. Penal Code § 825 and pursuant to the mandates of the Fourteenth Amendment to the United States Constitution for their arraignments within 48 hours of their arrests.

(FAC ¶ 94; Opp'n City-LAWA 10–11.)

Morris's filming-related allegations of a policy and failure to train remain conclusory and unsupported by necessary facts. Indeed, Morris fails to offer any causal link between his filming of the officers and his subsequent arrest, allegedly premised on "bogus" violations of the California Penal Code. Further, Morris does not provide any facts that support the conclusion that the officers' behavior stemmed from inadequate training procedures by the City or LAWA in responding to constitutionally protected actions, or that a failure to discipline individual officers for inappropriate responses to these protected actions caused their alleged behavior here. Certainly, the facts provided do not support the conclusion that City's or LAWA's alleged failure to train amounted to a de facto policy.

Additionally, Morris does not suggest "the existence of a pattern of tortious conduct by inadequately trained employees," as the pleadings do not indicate that City and LAWA officers' behavior has caused similar injuries to others. *See Brown*, 520 U.S. at 407–08 (requiring a plaintiff to plead a pattern of officer misconduct tending to show a lack of proper training, rather than a single instance). As the Court previously held in its July Order, additional factual support is needed before these allegations would meet the threshold pleading requirements of a *Monell* claim. (July Order 8–9.) Because Morris fails to plead the required factual support, the Court finds his filming-related policy and failure to train allegations conclusory and insufficient to support a *Monell* claim.

Morris's contention that City's and LAWA's officers failed to bring him before a judge or judicial officer within 48 hours is similarly deficient. Morris provides no facts to support a finding that: (1) City and LAWA had an existing custom or policy to over-detain individuals or otherwise cause them to miss their arraignments; (2) officers applied this policy in his situation; or (3) such a policy injured others similarly. *See Young*, 687 F. Supp. 2d at 1163 (identifying these pleading requirements as necessary to sufficiently state a *Monell* claim); *Dougherty*, 654 F.3d at 900 (similar). As Morris fails to plead the required factual support, the Court finds his policy or custom allegations insufficient to support a *Monell* claim.

Accordingly, for the reasons outlined above and in the July Order, the Court dismisses Morris's fifth cause of action against the City and LAWA.

        2.      *Claims Against Defendant County*

In the First Amended Complaint, Morris asserts his fifth cause of action against Defendant County and County employees, alleging the Los Angeles County Sheriff's Department, the Sheriff, and County workers employed by the Sheriff's Department:

> established an official written policy and official custom and practice at all of the Los Angeles County Jails, to automatically place all arrestees and other inmates admitted / brought to the Los Angeles County Jail during the years 2020 and 2021 into COVID-19 quarantine upon their

> arrival at the Los Angeles County Jails, for a period of time of at least 14 days and as long as 20 days. . . . [And that] . . . arrestees . . . [were designated as] medically not fit to attend their arraignments in Los Angeles County Superior Court [during this time].

(FAC ¶¶ 99–100 (footnote omitted); Opp'n 16–17.)[4]

Accepting Morris's COVID-19 allegations as true and in a light most favorable to him, the claim still falls short of the *Monell* requirements. Indeed, while no party denies that Morris has a constitutional right to due process, the remaining elements of a *Monell* claim—that Plaintiff was deprived of that right, the municipality had a policy, that policy amounted to deliberate indifference to Morris's constitutional right, and the policy was the moving force behind the constitutional violation—are all lacking. *See Dougherty*, 654 F.3d at 900 (identifying these elements as necessary to state a *Monell* claim based on a policy, practice, or custom).

From the facts alleged, it is unclear that any COVID-19 quarantine policy as Morris describes it (a) exists and (b) is a County policy. And although Morris plausibly alleges that the Los Angeles County Jails quarantined new intake persons for 14 to 20 days during the COVID-19 pandemic, Morris provides no factual allegations supporting that this practice included designating individuals "medically not fit to attend their arraignments in Los Angeles County Superior Court." (FAC ¶ 100.) Indeed, the County disputes that it had such a policy, and insists that longer wait times before arraignment were due to Governor Newsom's Executive Orders and the Los Angeles Superior Court Presiding Judge's General Orders. (County Mot. 12–13.) Morris does not provide factual allegations to support that the COVID-19 quarantine policy prevented him from being brought before a judicial officer, nor has he sufficiently shown that County policies, rather than State or Judicial policies, caused a delay in his own arraignment.

---

[4] Although Morris alleges additional County "policies," he opposes dismissal only as to his COVID-19 quarantine allegations. (*See generally* Opp'n County.) As such, the Court addresses its analysis to that theory of liability as well.

Morris fails to plead sufficient allegations to raise this claim above a speculative level, and also fails to meet the pleading requirements to state a *Monell* claim. *See Iqbal*, 550 U.S. at 555 (finding that to survive a motion to dismiss, allegations must "raise a right to relief above the speculative level"). Accordingly, for the reasons outlined above and in the July Order, the Court dismisses Morris's fifth cause of action against the County.

### C. Leave to Amend

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Here, Morris has improperly amended his complaint to include new theories, claims, and parties, casting doubt as to whether he has anything appropriate left to plead in support of his *Monell* claim. However, because the Court cannot conclude with certainty that no plausible, legitimate amendments to the fifth cause of action exist, it finds that limited leave to amend is once more appropriate. However, the Court is not inclined to grant further leave to amend without an adequate showing that further amendment would be fruitful. *See Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (providing that leave to amend "is properly denied . . . if amendment would be futile").

### V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motions to Dismiss Morris's First Amended Complaint. (ECF Nos. 45, 48.) Further, as detailed above, the Court **STRIKES** allegations, claims, and defendants improperly added beyond the scope of the Court's prior leave to amend. (*See* July Order 8–9.) The

Court again grants Morris limited leave to amend only the fifth cause of action and under the same parameters established here and in the Court's July Order.

If Morris chooses to amend, the Second Amended Complaint is due no later than twenty-one (21) days from the date of this Order, in which case Defendants shall answer or otherwise respond within fourteen (14) days of Morris's filing of the Second Amended Complaint.  If Morris does not timely amend, the dismissal of his fifth cause of action shall be deemed a dismissal with prejudice as of the lapse of the deadline to amend, and Defendants shall answer the First Amended Complaint, as modified herein, within fourteen (14) days of Morris's lapsed deadline.

**IT IS SO ORDERED.**

March 25, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**