O

# United States District Court
# Central District of California

| | |
|---|---|
| CALVIN LORENZO MORRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF LOS ANGELES et al.,<br><br>    Defendants. | Case № 2:22-cv-09277-ODW (MRWx)<br><br>**ORDER DENYING MOTION TO DISMISS [61]** |

## I.   INTRODUCTION

Plaintiff Calvin Lorenzo Morris brings this suit against Defendants County of Los Angeles (the "County") and its employees, asserting constitutional violations based on Morris's over detention.[1]  (Second Am. Compl. ("SAC") ¶¶ 5, 8, 14, 106, ECF No. 59.)  The County moves to dismiss Morris's cause of action asserted against it for municipal liability in the Second Amended Complaint.  (County Mot. Dismiss SAC ("Mot." or "Motion"), ECF No. 61.)  For the reasons discussed below, the Court **DENIES** the County's Motion.[2]

---

[1] Morris also names as Defendants the City of Los Angeles, the Los Angeles World Airports, and their employees.  (SAC ¶¶ 4, 6.)  The Court granted the City of Los Angeles and Los Angeles World Airports's Motion to Dismiss the Second Amended Complaint as against them.  (Order Granting Mot. Dismiss, ECF No. 67.)  Accordingly, they are no longer parties to this case.

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND

In determining whether Morris sufficiently states a claim, the Court takes Morris's well-pleaded factual allegations as true. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

On December 22, 2020, Morris was involved in an altercation at Los Angeles International Airport. (SAC ¶¶ 18–24.) Police officers with the Airport Police Department arrested him, and officers with the Los Angeles Police Department ("LAPD") transported him to an LAPD station for booking. (*Id.* ¶¶ 24–34.) On December 23, 2020, LAPD officers transferred him to the Los Angeles County Central Men's Jail. (*Id.* ¶¶ 35, 78.)

The County had an established official written policy and official custom and practice at all Los Angeles County Jails during the time Morris was detained to automatically place all arrestees into a COVID-19 quarantine upon their arrival for fourteen to twenty days. (*Id.* ¶ 76.) This policy included classifying all incoming arrestees as "medically not fit to attend their arraignments" during the quarantine. (*Id.* ¶ 77.) The County also had a policy "to make no effort to determine whether criminal charges had been filed" by other agencies during the quarantine. (*Id.* ¶¶ 107, 109.) As a result of these policies, customs, and practices, Morris remained incarcerated at the County's jail until January 8, 2021, a total of seventeen days, without a probable cause hearing, arraignment, or criminal charge. (*Id.* ¶ 113.)

Based on the above allegations, Morris initiated this action against Defendants for constitutional violations pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1.) After prolonged motion practice, Morris filed the operative Second Amended Complaint. (SAC.) In addition to causes of action against various Doe Defendants, Morris asserts one § 1983 cause of action against the County for failure to train and unconstitutional policy or custom pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) ("*Monell* claim"). (SAC ¶¶ 73–120.)

The County moves to dismiss the cause of action asserted against it. (*See generally* Mot.) The Motion is fully briefed. (*See* Opp'n 63; Reply, ECF No. 64.)[3]

### III. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy "the minimal notice pleading requirements of Rule 8(a)(2)"—"a short and plain statement of the claim." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679 (internal quotation marks omitted). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

---

[3] The County requests judicial notice of the COVID-19 pandemic timeline, certain LAPD policies, and attorney correspondence and Court orders in this case. (Req. Judicial Notice ¶¶ 1–38, Exs. A–H, ECF No. 62.) Morris opposes judicial notice of the COVID-19 "facts" and the LAPD policies. (Opp'n 2–3.) The County's requests are either not properly subject to judicial notice or irrelevant to resolution of the present Motion. Further, the Court need not judicially notice Court orders issued in this case to consider them. Accordingly, the Court **DENIES** the County's request. (ECF No. 62.)

## IV. DISCUSSION

In Morris's fourth cause of action against the County for *Monell* liability, he alleges the County violated his constitutional right to due process when it detained him for seventeen days without an arraignment or any charges. (SAC ¶ 113.) The County seeks to dismiss Morris's *Monell* claim as insufficiently pleaded. (Mot. 5.) The County argues that it was reasonably following the directions of public health officials and was acting only as a jailor, meaning the County was not deliberately indifferent to Morris's constitutional rights. (*Id.*)[4]

### A. *Monell* Claim

To state a claim for *Monell* liability, a plaintiff must allege a constitutional injury that results from, among other things, a custom or policy of the municipality, or a failure to train the municipality's police officers. *Monell*, 436 U.S. at 690–91; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Where *Monell* liability is based on a policy or custom, a plaintiff must allege several threshold requirements: "(1) that [the plaintiff] possessed a constitutional right of which [they were] deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (first alteration in original).

To establish that a municipality had a policy, a plaintiff must do more than merely allege that a municipal defendant "maintained or permitted an official policy . . . of knowingly permitting the occurrence of the type of wrongs" alleged in the complaint. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Rather, a plaintiff must sufficiently "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to

---

[4] To the extent the Court does not explicitly address in this Order an argument the County raises in its Motion, the Court finds the argument frivolous or unsupported.

deliberate indifference." *Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010). Policies can include "written policies, unwritten customs and practices, [and] failure to train municipal employees on avoiding certain obvious constitutional violations." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).

Accepting Morris's amended allegations as true and in a light most favorable to him, Morris plausibly satisfies the requirements to state a *Monell* claim. (*See* SAC ¶¶ 74–120.) Morris alleges that the Los Angeles County Sheriff's Department ("LASD"), an arm of the County, had an official written policy to place all arrestees into COVID-19 quarantine, which automatically classified them as medically unfit to attend a court arraignment for fourteen to twenty-one days, regardless of their COVID-19 status. (*Id.* ¶¶ 76–77.) He also describes LASD's policy and practice to make no attempt to ascertain whether criminal charges had been filed against arrestees during the quarantine period. (*Id.* ¶ 107.) He alleges that these policies resulted in arrestees, including Morris, remaining confined far beyond the forty-eight hours permitted by the California Penal Code and the Fourteenth Amendment to the U.S. Constitution. (*Id.* ¶¶ 78–80, 85–87, 110–12.) While he acknowledges that a judicial order extended the statutory forty-eight-hour period to seven days for many appearances during periods of the pandemic, he further alleges this extension either did not apply to him or was not in effect during his detention. (*Id.* ¶¶ 98–100.) In any event, whether over-detained by nine or fifteen days, he alleges that County detained him for longer than the Constitution permits. (*Id.* ¶¶ 111–12.)

Morris supports the above assertions with factual allegations regarding the quarantine policy, the medically unfit policy, the widespread effect of these policies on thousands of arrestees in 2020 and 2021, and the effect on him individually to allegedly violate his constitutional right to due process under the Fourteenth Amendment. (*See id.* ¶¶ 76–120.) Thus, the Court finds that Morris has added sufficient factual support to plausibly establish that he was deprived of his

constitutional right to due process as a result of the County's official written policies to quarantine all incoming arrestees, including him, and declare them medically unfit for court appearances.

While Morris has sufficiently alleged official "written policies," the Court expressly finds that Morris does not allege any "unwritten policies," nor could he. There can be no reasonable dispute that, in 2020 and 2021, the COVID-19 pandemic was novel and quickly evolving. Thus, any unwritten policy concerning COVID-19 protocols could not have been "so permanent" or "well settled" that it amounted to an established custom. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (recognizing that unwritten widespread practice may support *Monell* liability where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law"). The Court also expressly finds that Morris does not provide any factual allegations to support a "failure to train" theory of municipal liability in the fourth cause of action. (*See* SAC ¶¶ 74–120.)

The only *Monell* element that remains in question is whether the written polices amounted to deliberate indifference to Morris's constitutional rights and the rights of arrestees. *See Dougherty*, 654 F.3d at 900 (listing elements of *Monell* claim). However, at this pleading stage, Morris's allegations sufficiently support an inference that the challenged policy—to declare a detainee medically unfit to attend a constitutionally required court appearance, regardless of that detainee's current medical status—is obviously constitutionally deficient and likely to cause constitutional injury. *Young*, 687 F. Supp. 2d at 1163 (noting that a policy amounts to deliberate indifference when the deficiency is obvious and the constitutional injury likely).

Therefore, Morris sufficiently pleads a *Monell* claim against the County with respect to the alleged official written policies, but not with respect to any unwritten policies or failure to train.

## B.      County's Arguments

The County raises several arguments in moving to dismiss the *Monell* claim, none of which have merit. (*See* Mot. 5.)

For instance, the County argues that it cannot be liable for the quarantine and medically unfit policies because Morris "admits" the County was just "follow[ing] the direction of the public health officials at the County, State and Federal levels.'" (Mot. 7 (quoting SAC ¶ 84).) However, in the paragraph that the County quotes, Morris is in turn quoting the County's interrogatory response. (*See* SAC ¶ 84 (quoting Cnty. Resp. Interrog. No. 8).) The County's attempt to represent its own discovery response as Morris's affirmative allegation is not well received.

The County also argues that it cannot be liable for Morris's over detention because its policies were not the moving force behind any constitutional violations, it reasonably relied on LAPD's policy to notify the County if an inmate could be released, and Morris was arrested for making terrorist threats in an airport during a pandemic. (Mot. 8, 10–11.) Each of these arguments raises issues more appropriate for resolution on a dispositive motion or at trial, not on a Rule 12(b)(6) motion.

Finally, the County contends that its *Monell* liability depends on whether the Los Angeles County Sheriff ("Sheriff") acted as a policymaker for the state or the County.[5] (*Id.* at 10.) The County argues, "[I]f he is a policymaker for the state, then the [C]ounty cannot be liable for his actions." (*Id.*)

Whether a sheriff acts as a policymaker for the state or county is not an "'all-or-nothing' categorization," but rather depends on the sheriff's role "with regard to the particular action alleged to have deprived the plaintiff of civil rights." *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 838 (2004). The Ninth Circuit has held that a sheriff acts as a policymaker for the county in the oversight and management of

---

[5] Although the County's moving arguments on the whole lack clarity, the County's argument on this issue is particularly opaque. (*See* Mot. 8–10.) Therefore, the Court addresses the argument it understands the County to be making.

county jails. *Streit v. County of Los Angeles*, 236 F.3d 552, 561 (9th Cir. 2001).[6] At this pleading stage, Morris plausibly alleges that the challenged policies implicate the oversight and management of the County jails, and not law enforcement functions. Therefore, under *Streit* and Morris's allegations, the Sheriff acted as a County policymaker and the County may thus be liable under *Monell* for the resulting alleged over detention.

In sum, the County offers no persuasive or meritorious argument to alter the Court's conclusion above that Morris sufficiently pleads a *Monell* claim against the County.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** the County's Motion to Dismiss Morris's *Monell* claim in the Second Amended Complaint. (ECF No. 61.)

**IT IS SO ORDERED.**

October 1, 2024

_____
                    **OTIS D. WRIGHT, II**
              **UNITED STATES DISTRICT JUDGE**

---

[6] The California Supreme Court holds that a sheriff acts as a policymaker for the state, not the county, when operating in a law enforcement capacity, such as investigating crimes. *Venegas*, 32 Cal. 4th at 835, 839. This holding is contrary to earlier Ninth Circuit precedent, which held a sheriff acts for the county when in a law enforcement capacity. *See Brewster v. Shasta County*, 275 F.3d 803, 805 (9th Cir. 2001). However, this apparent conflict is not relevant because the policies alleged here relate to the management of the County jails, not law enforcement.